407 A.2d 48

**John W. KNAPP, Appellant,**

v.

**Verden T. KNAPP and Robert G. Knapp, her husband.**

Superior Court of Pennsylvania.

Argued Oct. 23, 1978.

Decided July 13, 1979.

James W. Daub, Pittsburgh, for appellant.

No brief filed on behalf of appellees.

Before CERCONE, WIEAND and HOFFMAN, JJ.

HOFFMAN, Judge:

Appellant in his brief makes three contentions: (1) the Adjudication and Decree Nisi of the chancellor below, and the Final Decree of the court *en banc,* are insufficient to allow meaningful appellate review, requiring a remand; (2) the court erred in not entering a money judgment in favor of plaintiff for amounts where liability was admitted by the defendants during the course of the litigation; and (3) the court erred in not awarding plaintiff judgment on other amounts of money damages where liability was in dispute, said decision being against the weight of the evidence. Our review of the record reveals that we cannot pass upon appellant's contentions because of the inadequacy of the adjudication below and, therefore, we remand for a more thorough and complete adjudication.

Plaintiff is the sole proprietor of two business ventures, "Knapp Brothers Building Company," and "Knapp Land Development Company" (hereinafter collectively the Company). Plaintiff was an absent owner who entrusted the day to day affairs of the Company to his brother, defendant Robert Knapp, whom he employed as managing officer. Defendant Verden Knapp, Robert's wife, while not employed by plaintiff, nevertheless actively participated in the business, helping with the books and marketing the homes which the Company constructed. The Company consistently lost large amounts of money ($50,000 in each of the

five years that Robert Knapp was employed); plaintiff sought to prove that these losses resulted from the defendants' incompetence and conversion of substantial amounts of Company funds to their own personal use. The trial of plaintiff's case [1] lasted eleven days and consumed over 1700 pages of notes of testimony, during which time plaintiff attempted to trace literally hundreds of expenditures over a period of five years to show wrongful dispersal of Company funds by the defendants. Plaintiff was not aided by the fact that the defendants kept the Company books and records as poorly as the Company itself fared. After the trial, both sides submitted numerous detailed requests for findings of fact.

The chancellor disposed of plaintiff's case in a two-page memorandum. After plaintiff filed exceptions, the court *en banc* issued a one-page order denying same.[2] We remanded for an adjudication in compliance with Pa.R.Civ.P. 1517. *Knapp v. Knapp,* 241 Pa.Super. 597, 360 A.2d 670 (1976). On remand, the chancellor entered an adjudication which was correct in form, but still lacks findings of fact specifically relating to each of plaintiff's many claims. As the chancellor explained in Finding of Fact No. 21: "The Chancellor made no effort to trace each individual check, voucher, or financial transaction as to its purpose, necessity, or its relevance. To do so would require the employment of a qualified account at a tremendous cost. In view of the holding of this court, we rule the same to be unnecessary

1. Defendants submitted a counterclaim for unremunerated services which was dismissed by the court below. Defendants have not cross-appealed. Therefore, our remand is limited to a determination of plaintiff's claims. Defendants have waived the opportunity to press their counterclaim any further.

2. The reason given by the court for its decision was as follows: "We have again attempted to resolve the mechanics of accounting to attempt an answer to the plaintiff; but . . . [a]s indicated by counsel for Plaintiff upon his argument on exceptions, he consumed Nine (9) Months in attempting to resolve the issues in his favor, and this was done only by reason of his accounting ability, which the Court does not possess. Therefore, we affirm . . . ."

and immaterial."[3]  After plaintiff again filed exceptions, the court *en banc* issued a two-page Final Decree denying same.

It appears that notwithstanding our earlier remand, the adjudication before us is not sufficiently detailed to allow appellate review of the case.  If the complexity of the issues in this case requires a technical understanding of accounting, then an expert accountant should be appointed to aid the court.[4]  In the meantime, the failure to reduce this voluminous record to specific findings of fact in relation to each of plaintiff's claims prevents meaningful appellate review of this case.[5]  Thus, we remand to the court below for an adjudication containing specific findings of fact on all of plaintiff's claims.

Reversed and remanded.

3.  The holding referred to was the court's finding that plaintiff had knowingly authorized and condoned whatever Company funds defendants had spent for their personal use.  Not only is there lacking in the record even a scintilla of evidence to support this finding, such a defense was never even raised in the defendants' pleadings.  At trial, Mr. and Mrs. Knapp defended on the grounds that the Company funds spent were for business purposes and, insofar as there was personal use, the Company was reimbursed; where reimbursement was lacking and liability was admitted, they claimed a set-off for unremunerated services.

4.  *See* Pa.R.Civ.P. 1515, which reads in full:
"In actions involving complicated accounts, or questions requiring the evidence of experts, the court may employ an accountant or other expert to aid in the proper disposition of the action.  The report or evidence of such accountant or other expert shall be available to any party and he shall be subject to examination or cross-examination by any party.  He shall be paid reasonable compensation for his services."

5.  For example, at trial plaintiff showed that defendants took a vacation in Miami Beach, Florida, and charged all their expenses including travel and hotel, to the Company.  On direct, Robert Knapp testified in defense that the trip had a business purpose, because one day he drove 300 miles from Miami Beach to look over some property near Fort Lauderdale which he was thinking of purchasing for the Company.  Nothing ever came of this, he admitted, but "at the time it was a very good idea."  N.T. 277.  In the absence of any mention of the Florida vacation in the adjudication below, we cannot make a decision on the merits of this claim, and numerous other disputed claims like it in the record.